# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Randall Collier,**
**Plaintiff(s), Appellant(s)**
**v.**
**James M. Carroll,**
**Michael Garner,**
**The NH Judicial Conduct Committee,**
**Defendant(s), Appellee(s).**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Case No. 24-1657

## PRINCIPAL BRIEF OF APPELLANT RANDALL COLLIER:

Appeal from the United States District Court of New Hampshire, Case No.
1:24-cv-00015-JL-AJ,

## PETITION FOR APPEAL OF CASE: No.1:24-cv-00015-JL-AJ, Randall Collier, Plaintiff,

**v.** Hon. James M. Carroll, Hon. Michael Garner, and the New Hampshire Judicial Conduct
Committee, by and through the New Hampshire Office of the Attorney General as counsel
(collectively, the "Judicial Defendants")
[https://www.courtlistener.com/docket/68181202/collier-v-carrol/].

## PRELIMINARY STATEMENT:

In this brief, Plaintiffs-Appellants Randall Collier and Appellant T.C. (a minor), will
collectively be referred to as Appellants, and/or Plaintiffs. Defendants-Appellees James M.
Carroll, Michael Garner, and The NH Judicial Conduct Committee, will collectively be referred
to as Appellees or Defendants.

References herein to 'Behr v. Campbell, No. 18-12842 (11th Cir. 2021)', will be referred to as:
"DE X at Y," where "X" represents the docket number, and "Y" represents the page number. If
preceded by a "§" or "¶," then the "Y" represents the section or paragraph number, respectively.
https://law.justia.com/cases/federal/appellate-courts/ca11/18-12842/18-12842-2021-08-12.html
https://casetext.com/case/behr-v-campbell/
https://www.abi.org/feed-item/the-expansion-of-the-rooker-feldman-doctrine-is-over-and-far-few
er-cases-will-be-barred

## STATEMENT REGARDING ORAL ARGUMENT:

Appellant Randall Collier believes that oral argument would be beneficial to the resolution of the issues on appeal which relate to the sua sponte dismissal with prejudice of a pro se complaint based on a sweeping application of the narrow Rooker-Feldman doctrine.

## TABLE OF CONTENTS:

Page#...TITLE:

p1...PRELIMINARY STATEMENT:

p1...STATEMENT REGARDING ORAL ARGUMENT:

p2...TABLE OF CONTENTS:

p2...STATEMENT - FACTS OF THE CASE:

p4...TIMELINE OF EVENTS

p4...STATEMENT OF THE ISSUES:

p4...THIRTEEN (13) MAIN ARGUMENTS SUPPORTING THIS APPEAL:

p8...II. STANDARD OF REVIEW:

p9...SUMMARY OF ARGUMENT(S):

p10...ARGUMENT(S):

p15...CONCLUSION:

p15..."WHEREFORE, the Plaintiff respectfully requests that the Court:"

p16...TABLE OF CITATIONS:

p16...CERTIFICATE OF COMPLIANCE:

p16...CERTIFICATE OF SERVICE:

p17...SIGNATURE, STATEMENT OF TRUTH, NOTARY SECTION:

p17...NOTARY STAMP & SIGNATURE, ACKNOWLEDGMENT:

...

**p19... TIMELINE OF EVENTS: (FULL)**

p23...4/16/2024 "Order on Pending Motions...Final Order"..

p25..."TIMELINE FOR THREE(x3) "Judicial Complaints" mentioned herein:"

## STATEMENT - FACTS OF THE CASE:

I, Randall Collier, am the biological father to T.C. born 04/26/11. On 12/18/12, I received a 5 page Domestic Violence Petition from (biological mother) Ms. Hillary May. Allegations by Ms. May noted emotional abuse, obsessed with the truth, guns, constitutional rights, emotionally unstable, and hurting our son's development. During the Hearing, Ms. May assured the court she wasn't threatened or coerced to withdraw the petition. I was then given a no contact request by Ms. May not to contact her or T.C. pending a parenting petition. This violates the shared parenting law. In the proceeding order, the family court noted " no concrete threats from Mr. Collier either towards Ms. May or toward T.C. Nor do the text messages contain any specific

inference that Mr. Collier intends to take T.C. away from Ms. May, or into the woods". However the text messages appear to increase in frequency and animosity as his frustration mounts from being out of the residence and not seeing T.C.".

During the Parenting / stalking petition, Ms. May alleged I threatened her ( no actual threat given) and she is in fear for the safety of both her and T.C. Medical records submitted, the court noted "the boy is doing fine". I received a protective order for Criminal Threatening for an attempted staredown with petitioner's counsel. I then received supervised visits "for T.C. 's memory of his good relationship with his father". The Family Court contended the parenting plan was more complex than what the court would impose and this is a good thing because Mr. Collier will know exactly what is expected of him" Almost 12 years later, these orders are still currently active and I have no contact with T.C. It has been over 5 years since last physical contact with T.C. Ms. May has stopped all phone communication ordered under her parenting plan.

In 2015, Ms. May was allowed to relocate with T.C. to North Carolina. The NH Family Court noted I am to continue with supervised visits in North Carolina at my full expense once a month for two(2) hours for six(6) years. The court later contended "the parenting plan is of significant restriction even for the normal parenting plan". I objected to the move prior to moving away and motioned for them to return to NH, all denied.

April 16th, 2024 Order on Pending Motions
Page 5 "The Court's Narrative Order on the DV Final Orders reflected its deliberation on the evidence and the reasons the Order was entered".
Page 6 "At present, the Rules of Evidence do not apply in these cases, and did not apply to the hearings which resulted in the Orders which Mr. Collier seeks to vacate".
Question 1. Evidence deliberated on and evidence did not apply? Evidence and no evidence? Twelve(12) years fighting, 500 filed motions, criminal statutes used, protection orders issued, six(6) years of supervised visits, and "Rules of Evidence did not apply to the orders Mr. Collier is seeking to vacate".

Ms. May, through her counsel (Tarbell and Brodich Attorneys at Law), and NH Family Court colluded to systematically and completely remove me from my son's life. Consequences of this non judicial process have resulted in psychological adult and child abuse, neglect, and parental alienation.

No care, custody or control of T.C. since 2012. I have spent a total of six (6) hours with T.C. since 2012. In a court document it was written that I can't "promise" anything to my son. This is a clear violation of my First Amendment Right. The emotional stress we have both endured has been overwhelming, and very depressing. The feeling of isolation and not being able to see or talk to your biological father and/or son is very cruel. Punishment against father and son for no crime committed is not in the best interest of T.C. Ms. May testified that T.C suffers from stress

and anxiety, and is seeing a counselor because of the phone calls. Ms. May testified in open court that T.C. is suffering at the hands of Ms. May and the NH Family Court. No action was taken by NH Family Court to correct T.C.'s abuse and emotional suffering. The abandonment I feel, as T.C. must also feel, is unjust and unbearable. To endure such atrocities is pure evil. I, Mr. Collier, assert governmental agencies (Chevron Doctrine recently overruled) and individuals working for those agencies conspired with Ms. May through various proceedings to subvert US Constitutional Law and not protect civil liberties as described herein. See, e.g., DE 56 ¶¶ 65-67, 78.

………………………………

On May 15th 2024 after my Second Complaint was filed, the District Court entered an Order sua sponte approving the report and recommendations to dismiss. DE 57.1 In just over one page of analysis, the District Court applied the Rooker-Feldman doctrine.

I, Randall Collier, am requesting this court to review the determinations by the state of NH that caused my son T.C. to be removed from my custody and determine that it was the product of falsified reports, similar to behr v campbell, that because the Complaint was "essentially about the proper custody of his children," it lacked subject matter jurisdiction under the Rooker-Feldman Doctrine. The District Court added that "[t]his is also not the first time Plaintiff Mr. Collier has attempted to raise similar issues which have been dismissed under Rooker-Feldman," It was noted in my amended complaint that the 11th circuit determined the District Courts did have jurisdiction because of the Constitutional claims. NH District Court DIRECTLY IGNORED the 11th Circuit Case Law.

Litigants in NH Family Court can meet the elements of criminal statutes, receive protection orders and lose custody without evidence. NH Family Court denied two motions for discovery of relevant evidence (most favorable to him as required by Law) and 2 Show Cause motions, all while noting in multiple orders how Due Process is guaranteed for the litigants. Being an Unconstitutional Court as described herein, the State of NH has no judicial power to implement custody or protective orders through family court. These actions are clear violations of the NH and US Constitutions.

**TIMELINE OF EVENTS (See Attached, more complete "TIMELINE OF EVENTS"):**
…
12/13/12. Plaintiff (Mr. Collier) was escorted off the property and away from T.C.. Today is 03/19/24. 11 years and counting with custody of my son.
…
4/16/2024 Order on Pending Motions. This is a Final Order ( Motion to dismiss protective order):

**STATEMENT OF THE ISSUES:**

This appeal presents two questions for appellate review:

1. Whether the District Court erred in sua sponte dismissing with prejudice a pro se complaint for lack of subject matter jurisdiction under the Rooker-Feldman doctrine without applying the relevant standard set forth by the Supreme Court and the Eleventh Circuit to each claim.

2. Whether the claims asserted are independent from underlying state court family proceedings for purposes of Rooker-Feldman, meaning the success of those claims would not require that the District Court effectively nullify the state court judgment or conclude that the state court wrongly decided the issues before it, and/or Plaintiffs did not have a reasonable opportunity to raise those claims in state court.

## THIRTEEN (13) MAIN ARGUMENTS SUPPORTING THIS APPEAL:

I, Mr. Collier assert a number of (now 13) constitutional and tort claims that are independent from the underlying family court proceedings. For example, I seek damages under 42 U.S.C. § 1983 for:

1) The US Dist.Ct. in Prev. Case failed to respond to any of the "15" claims/allegations but only dismissed based on the "recommendation" of the "Magistrate" to dismiss the entire case based upon "Rooker-Feldman Doctrine", Despite the US.Appeals.Ct. in Behr v. Campbell, which was cited in my Response to the Motion to Dismiss, REQUIRES all courts to actually explain why each claim is being dismissed (or not), one at a time!

2) "Courts of Law" in the U.S.A. REQUIRE a proper conviction of an actual "crime" against a child's individual Human rights by a parent before they may "Lawfully" interfere with a parents rights to raise their child as they see fit, at all! This is a "deprivation of rights under color of law" and a violation of "due process of law" and "parental rights", the way these NH "Family Courts" are violating "due process of law".

3) Procedural due process violations based upon the use of falsified information as a basis for the proceedings: The allegations used to infringe this Plaintiffs Parental Rights (with a "protective order" still active 12 years and counting, sole decision making, and sole custody in favor of the mother, effectively removing my ability to mutually raise our biological son), were based upon "hearsay" and not "probable cause" and there was no "trial by jury" in these NH "Family Courts", or "proof beyond any reasonable doubt", in a proper "criminal prosecution", as required by "the supreme Law of the Land" and "common law", before infringing on my Parental rights. Therefore all orders from this "Family Court" like this "protective order" and custody order were not legitimate or lawful to begin with, because the procedures of this NH "Family Court" are violating "fundamental principles" of "the supreme Law of the Land" and "common law" as described herein. These procedures fundamentally violate the Mission Statement to follow the NH and US Constitutions.

4) During the House Special Committee on the Family Division of the Circuit Court (05/02/23)", https://www.youtube.com/watch?v=jVjJumYj6_w - "These Family Courts were created by statute". See 2hrs and 2h17m, Randall Collier and Paula Werme speaking]), not by State Constitution as required to make them legitimate "courts of law". Furthermore they are not "criminal courts" therefore they do not have "Lawful" "Authority" to conduct any "criminal prosecutions" or "searches and[/or] seizures" to begin with, making all of the court processes in these "Family Court" cases "unconstitutional" and "null and void", "ab initio" (from the beginning). "making all their Orders and actions "in legal contemplation as inoperative as though it had never been passed" (US.Supr.Ct., Norton v. Shelby). See testimony from Paula Werme in the NH Congress on this point, on 5/02/23. See "House Special Committee on the Family Division of the Circuit Court (05/02/23)", https://www.youtube.com/watch?v=jVjJumYj6_w (see 2hrs and 2h17m, Randall Collier and Paula Werme speaking). : "...AN ACT establishing the New Hampshire circuit court to replace the current probate courts, district courts, and judicial branch family division. ... Approved: May 16, 2011", "Effective Date: July 1, 2011", https://www.gencourt.state.nh.us/legislation/2011/HB0609.html;

See also, House Judiciary Committee meeting on 1/17/24 At the 5hr 21 minutes, NH State Rep Smith and Co-chair of the Judiciary Committee asks the General Counsel Erin Kregan "is the Supreme Court the only Constitutional Court in NH?" The General Counsel's response was "Superior Court is also a constitutional created court". Rep Smith then asked, " What about Circuit Court?" The General Counsel's response was "Circuit Courts were made by statute.". See US Supreme Court Decision [self v. Rhay, 61 wn (2d) 261] "Statutes are not the Law". House Judiciary (01/17/2024): https://www.youtube.com/watch?v=bRBjoHcXrek

5) Negligence for using criminal statutes against litigants in civil court:
a) If there was probable evidence of an actual crime these 'family courts' are liable for not reporting to an actual criminal court;
b) Only criminal courts are supposed to be prosecuting criminal codes, not these "family courts" (which are not legit to start as explained in the prev. reason #4 herein);
c) A "civil sanction" (as mentioned in reason #9 herein) is different from a "criminal code/law/statute". Criminal law in NH is only Title 62 (Sections 625-651 only, not 173b) and in US Codes only Title 18;
d) So these "Family Courts" are not legitimate to begin with, and may only aid people in resolving disputes between them if they are both willing to VOLUNTARILY submit to the courts orders, but these "Family Courts" are not "Criminal Courts of Law" and therefore cannot "lawfully" force any orders upon anyone against their will (like "protective orders" which must come from a "criminal court" according to "due process of law" like "probable cause", "trial by jury", and "proof beyond any reasonable doubt");

6) House Judiciary Committee meeting on 1/17/24 NH State Rep Kutab, stated "The Judicial Conduct Commission was made by legislation. The Judicial Conduct Committee was established by NH Supreme Court Rule. The NH Supreme Court found the Judicial Conduct Commission to be unconstitutional in 2011" Rep Kutab, stated "the Judicial Conduct Commission has been on the books for over 20 years, its not used, it has been confusing litigants because it has the same initials as the Judicial Conduct Committee, which is the process pro se litigants use when they have complaints against family court judges". House Judiciary (01/17/2024): https://www.youtube.com/watch?v=bRBjoHcXrek
I recently obtained a document from the Judicial Conduct Committee that notes they do not have jurisdiction to hear Administrative Court Judge complaints". Why are pro se litigants sent to the Judicial Conduct Committee for complaints against family court judges, if by their own admission they do not have jurisdiction to hear those complaints? Intentionally misleading litigants for 20 years is in the best interest of who?

7) House Judiciary and Children and Family Law Committee hearing on 3/28/23 Judge Michael Garner testified that" Rules of Evidence do not apply in Family Court, What we hope to be is the gatekeeper for reliable information". House Judiciary & Children and Family Law Joint Committee Meeting (03/28/23): https://www.youtube.com/watch?v=vbFOdcRT_XA
NH Judicial Branch Family Court Rule 2.2 "Rules of Evidence do not apply to the actions listed above. However, the court in its discretion may utilize the state of NH Rules of Evidence to enhance the predictable, orderly, fair, and reliable presentation of evidence".

8) We cannot 'vindicate' our 'rights' in "Family Court(s)" if "rules of evidence do not apply": During the House Special Committee of Family Division of the Circuit Court: on 4/2/24 NH General Counsel Erin Kregan stated "civil court is for the plaintiff to vindicate their rights, and in criminal court the burden of proof is much higher, the rights of the defendant are protected". "Civil sanctions are not meant to be punitive, they are intended for the plaintiff to vindicate their rights". House Special Committee on the Family Division of the Circuit Court (04/02/2024): https://www.youtube.com/watch?v=WPPyUg3Ua3E
NH Criminal Statutes used as civil sanctions against pro se litigants: See NH RSA 173b, review Claim 5 (Rules of Evidence do not apply).
Question 1. If Rules of Evidence did not apply, why are criminal statutes being used as civil sanctions against litigants?
Question 2. If relevant evidence was denied, how is Due Process guaranteed to the litigants?

9) Negligence for failing to lawfully allow evidence most favorable to [this Plaintiff] as required by law: Deprivations of rights to "due process of law"[A.5] for the judge denying access to video surveillance tapes from the court regarding meeting the elements of a charge of "criminal threatening"[117], for 2 years in a row (denying motions for "discovery" of evidence to defend against charges of "criminal threatening". Videos which are likely deleted since shortly

after the incident according to a court clerk[118]). "The essential elements of due process are notice and opportunity to defend" ones self. US.Supreme Ct., Simon v. Craft, 182 U.S. 427 (1901), https://supreme.justia.com/cases/federal/us/118/425/; See Timeline regarding 4 denied motions, 2 for discovery of video recordings from the attempted staredown and 2 motions for Show Cause.
Question 1. If Rules of Evidence did not apply to the orders I am seeking to vacate, what evidence did apply to support the Criminal Statutes used.

10) See 2024 US Supreme Court Case(b) wherein the Chevron Doctrine was recently overruled, and see youtube video(a): "Why Overturning Chevron Was A Fantastic Supreme Court Ruling: Steve Forbes": Chevron was an abuse of power, and a problem for the separation of powers, which undermined Congress and the US Constitution, and allowed administrative agencies the power to interpret law instead of the courts. At 2:20min Steve Forbes says: "The list of abuses is enormous, and getting worse."
(a)=Why Overturning Chevron Was A Fantastic Supreme Court Ruling: Steve Forbes: https://www.youtube.com/watch?v=_DjnHIr1KjI
(b)=https://www.whitecase.com/insight-alert/us-supreme-court-strikes-down-chevron-doctrine-what-you-need-know#:~:text=On%20June%2028%2C%202024%2C%20the.interpretations%20of%20ambiguous%20federal%20laws. Also see:
https://www.law.cornell.edu/wex/chevron_deference

11) SEC v. Jarkesy, 603 U.S. _ (2024): "In 2013, the Securities and Exchange Commission initiated an enforcement action against respondents George Jarkesy, Jr., and Patriot28, LLC, seeking civil penalties for alleged securities fraud. The SEC chose to adjudicate the matter in-house before one of its administrative law judges, rather than in federal court where respondents could have proceeded before a jury."
https://supreme.justia.com/cases/federal/us/603/22-859/

12) Social Security Act 1935 (d): "(d) Nothing in this Act shall be construed as authorizing any Federal official, agent, or representative, in carrying out any of the provisions of this Act, to take charge of any child over the objection of either of the parents of such child, or of the person standing in loco parentis to such child." https://www.ssa.gov/history/35act.html

13) Since the New Hampshire State "Family Court" and "Supreme Court" and "Judicial Conduct Committee" have all failed or refused to provide remedy to this Plaintiff, it seems clearly necessary that the Federal Courts take "Federal Question Jurisdiction" and correct the procedures in these New Hampshire State Courts which violate "fundamental principles" of "the supreme Law of the Land" like those described herein, and overturn this District Courts dismissal of this Plaintiffs Case based upon the "Rooker-Feldman Doctrine", and remand the case back for further proceedings with instructions to focus not on the specific orders in this

Plaintiffs New Hampshire Case(s), but rather upon the processes the entire NH State Courts are using and how they violate due process of law under the supreme Law of the Land and common law, and correct the excessive corruption in the lower courts, which clearly is the purpose of these higher Federal Courts. Otherwise it would seem this entire system of "Courts of Law" will have failed to provide remedy in these cases (so that "Rooker-Feldman Doctrine" should not apply here, as explained in Behr v. Campbell).

## II. STANDARD OF REVIEW:

A district court's determination that it lacks subject matter jurisdiction under the Rooker-Feldman doctrine is reviewed de novo. See Nicholson v. Shafe, 558 F.3d 1266, 1270 (11th Cir. 2009). Moreover, "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys" and therefore should "be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

The US Supreme Court has held that judges lack immunity from prosecution for violating constitutional rights under 18 U.S.C. 242 because congress acted to prescribe criminal conduct by judges in the civil rights act of 1866. Mar 10,2023. SInce the denial of rights (42 USC 1983) is a criminal act under 18 USC 242, there is no immunity for the judge for denying your constitutional rights because they are taking part in a criminal endeavor.

Purpose of the statute that mandated that any person who under color of law subjected another to deprivation of his constitutional rights would be liable to the injured party in an action at law was not to abolish immunities available at common law, but to insure that federal courts would have jurisdiction of constitutional claims against state officials. Act. March 3, 1875, 18 Stat.470. Butz v. Economou, 1978.

Gonzales V. Commission on Judicial Performance, (1983) 33 Cal. 3d 359, 371, 374. Acts in excess of judicial authority constitute misconduct, particularly where a judge deliberately disregards the requirements of fairness and due process.

## SUMMARY OF ARGUMENT(S):

The issue before this Court is narrow, yet it could have sweeping consequences, particularly with regard to the test by which trial courts are to review pro se complaints. This appeal also raises important questions regarding a federal court's jurisdiction to review federal questions relating to family law.

The District Court sua sponte applied the narrow Rooker-Feldman doctrine to dismiss a pro se 15-count Complaint alleging violation of Plaintiffs' rights by various government entities and individuals. Both the Supreme Court and this Court have cautioned against the expansive application of this jurisdictional doctrine, instructing that Rooker-Feldman is to apply only in

those cases of the kind from which the doctrine acquired its name: for litigants seeking to directly overturn a state court judgment and for claims that are inextricably intertwined with such a judgment, meaning the claim would effectively nullify the judgment or could succeed only to the extent the state court wrongly decided the issue. Rooker-Feldman does not generally apply to litigants who were not parties to the state court proceedings at issue, and it only applies to those proceedings that have reached a sufficient level of finality. The District Court's whole cloth dismissal of the operative complaint without providing any basis or analysis with regard to the individual claims or parties is contrary to these directives and sets a dangerous example for courts addressing inartfully pled pro se complaints.

Indeed, a number of the claims asserted by Plaintiffs are not, as a matter of law, barred under Rooker-Feldman. While, admittedly, success on some of the claims in the operative Complaint would necessarily imply the wrongfulness of the state court decisions (e.g., the Behrs seek to expunge three state court proceedings to which Louis was a party, see DE 56 ¶ 264), several of the Behrs' claims assert elements and request relief that are independent of the state court proceedings.

For example, the Behrs allege unreasonable search and seizure (Count 3), the type of claim this Court "readily" concluded was not inextricably intertwined with a state court custody proceeding in one of this Circuit's seminal cases on this issue. See Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1333–34 (11th Cir. 2001). https://law.justia.com/cases/federal/appellate-courts/F3/259/1327/575693/

I, Mr. Collier assert (among other things, 'inter alia'), independent claims that I/we (Plaintiffs-Appellants) were denied their rights to procedural due process (Count 2); that they were discriminated against based on age, gender, religion, and/or mental health status/disability (Count 10); and that government agencies and employees acted with negligence (Count 7), committed medical malpractice (Count 15), committed libel and slander (Count 20), and committed legal malpractice (Count 21), and I/we hereby seek damages with regard to these constitutional and tort claims.

The District Court's one-page legal analysis and one-paragraph application of the Rooker-Feldman doctrine to this action failed to take into consideration those claims that were independent of the custody determination, nor did it analyze any cases applying that doctrine to family law proceedings. The District Court instead relied upon Ankenbrandt v. Richards, a Supreme Court case that did not apply Rooker-Feldman, but instead broadly discussed the "domestic relations exception," a principle that "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." 504 U.S. 689, 704 (1992). Not only did the District Court disregard a number of Eleventh Circuit cases applying Rooker-Feldman in similar instances, the Court relied upon a domestic relations principle that is inapplicable to a number of

the Behrs' claims that are independent from the custody determination. Finally, the District Court's reference to a Pennsylvania case filed by Louis that was dismissed over 20 years ago under Rooker-Feldman is wholly irrelevant to this action and demonstrates the Court's uncritical haste in dismissing this case. This Circuit's precedent establishes that the District Court improperly concluded that it lacked jurisdiction over any of the Behrs' claims and erred by considering the action as a whole instead of applying the Rooker-Feldman standard to the claims asserted. The proper remedy is to reverse the District Court's jurisdictional determination and remand for further proceedings on the merits. Mr. Collier hereby respectfully requests the Court grant such relief.

## ARGUMENT(S):
## I. THE ROOKER-FELDMAN DOCTRINE IS NARROW AND IS "CONFINED TO THE CASES OF THE KIND FROM THE WHICH THE DOCTRINE ACQUIRED ITS NAME":

A. Development Of The Rooker-Feldman Doctrine In The Supreme Court:

The Supreme Court has applied the Rooker-Feldman doctrine only twice to dismiss a claim for lack of subject matter jurisdiction: first in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and again sixty years later in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283, 287 (2005). In Rooker, the plaintiffs had alleged an adverse state-court judgment was unconstitutional and asked the federal court to declare it null and void. 263 U.S. at 414–15. The Court concluded that federal district courts lacked appellate authority over such a claim because their jurisdiction was "strictly original," and only the Supreme Court was empowered to exercise appellate authority to reverse or modify a state court judgment. Id. at 415–17. In Feldman, the two plaintiffs petitioned the District of Columbia Court of Appeals to waive a court rule requiring that D.C. bar applicants graduate from an accredited law school. When the D.C. court denied their requests, they filed in federal district court. 460 U.S. at 465–73. The Supreme Court held that to the extent the plaintiffs sought review of the D.C. court's denial of their petitions for waiver, the district court lacked subject matter jurisdiction. Id. at 482. Moreover, the plaintiffs' allegation that the D.C. court acted arbitrarily in denying the waiver petitions because it had a former policy of granting waivers to graduates of unaccredited schools was likewise barred because it was "inextricably intertwined" with the D.C. court's decision to deny the petitions. Id. at 486–87. Addressing the proper scope of the Rooker-Feldman doctrine, the Supreme Court subsequently observed that, after Feldman, the doctrine had been "[v]ariously interpreted" and warned that lower courts at times had extended it "far beyond the contours of the Rooker and Feldman cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law . . . ." Exxon Mobil, 544 U.S. at 283. As a result, the Court explained that Rooker-Feldman is a narrow doctrine "confined to the cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284. The Court further noted that "Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss
proceedings in deference to state-court actions." Id.

In Exxon Mobil, the plaintiff had filed its claims in federal court shortly after the relevant state court action was filed in order "to protect itself in the event it lost in state court on grounds . . . that might not preclude relief in the federal venue." Id. at 293–94. In concluding that Rooker-Feldman did not prevent the district court from exercising jurisdiction over Exxon Mobil's claims, the Court observed that a district court is not prevented from "exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." Id. at 293. Instead, if "a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party," the court has jurisdiction, but should ultimately and separately determine if principles of preclusion apply. Id. (internal alteration, quotation marks, and citation omitted).

The next term, the Supreme Court further limited Rooker-Feldman, clarifying that it is "inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding." Lance v. Dennis, 546 U.S. 459, 464 (2006). The Court rejected the district court's application of Rooker-Feldman against parties who were in privity with a party to the earlier state court action, concluding the district court "erroneously conflated preclusion law with Rooker-Feldman" and that such an analysis "risks turning that limited doctrine into a uniform federal rule governing the preclusive effect of state-court judgments." Id. at 465–66 (emphasis in original).

B. This Court's Treatment Of The Rooker-Feldman Doctrine

This Court has acknowledged that the Rooker-Feldman doctrine "extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court judgment." Siegel v. LePore, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc). "A federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it,'" id. (citation omitted), or if the requested relief "would effectively nullify [the] state order[]." Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1333 (11th Cir. 2001) (citation omitted). However, "even if a claim is 'inextricably intertwined' with the state court's judgment, the doctrine does not apply if the plaintiff had no 'reasonable opportunity to raise his federal claim in state proceedings.'" Id. at 1332 (citation omitted).

The Court having so limited the doctrine, Justice Stevens' dissent in Lance questioned its viability in the future, declaring that "Justice Ginsburg's lucid opinion" in Exxon Mobil "finally interred the so-called 'Rooker-Feldman doctrine'" and that the Lance majority had "quite

properly disapprove[d] of the District Court's resuscitation of a doctrine that has produced nothing but mischief for 23 years." Lance, 546 U.S. at 468 (Stevens, J., dissenting).

Prior to the Supreme Court's decision in Exxon Mobil, this Court employed a four-part test to guide its application of the Rooker-Feldman doctrine, barring jurisdiction where:
(1) the party in federal court is the same as the party in state court . . . ; (2) the prior state court ruling was a final or conclusive judgment on the merits . . . ; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding . . . ; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment . . . . Nicholson v. Shafe, 558 F.3d 1266, 1272 (11th Cir. 2009) (quoting Amos v. Glynn Cty. Bd. of Tax Assessors, 347 F.3d 1249, 1266 n.11 (11th Cir. 2003)).

However, following Exxon Mobil, this Court concluded that "[r]ather than apply Amos, we adhere to the language in Exxon Mobil, delineating the boundaries of the Rooker-Feldman doctrine: 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Nichols, 558 F.3d at 1274 (quoting Exxon Mobil, 544 U.S. at 284).4 4 Consistent with this analysis, scholars have advocated that, in the wake of Exxon Mobil, courts can—and should—"decide at least some Rooker-Feldman cases without making any real use of the 'inextricably intertwined concept," observing that "anyone who now starts with the phrase in determining whether the doctrine applies either hasn't read Exxon Mobil or hasn't read it right. Instead, it appears that the place to begin is the Court's distillation of the limited circumstances in which the doctrine applies." Thomas D. Rowe Jr. & Edward L. Baskauskas, "Inextricably Intertwined" Explicable at Last? Rooker-Feldman (footnote continued on next page)

It is within this limited framework that the District Court should have analyzed the claims asserted.

## II. **THE DISTRICT COURT ERRED IN ITS SWEEPING APPLICATION OF THE ROOKER-FELDMAN DOCTRINE TO DISMISS WITH PREJUDICE ALL OF PLAINTIFFS' CLAIMS:**

A. The District Court Erred In Dismissing The Complaint For Lack Of Subject Matter Jurisdiction Without Examining Rooker-Feldman's Application To Each Claim:

The District Court erred in broadly applying Rooker-Feldman to all claims asserted in the operative Complaint without examining whether any of Plaintiffs' constitutional or state law claims were independent of the state custody determination or family court proceedings. See Lance, 546 U.S. at 464 ("Neither Rooker nor Feldman elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts, and our cases since Feldman have tended to emphasize the narrowness of the Rooker-Feldman rule."). The District Court instead relied upon Ankenbrandt v. Richards for the unremarkable proposition that the "domestic relations of

husband and wife, parent and child" are the subject of state, not federal, laws. 504 U.S. 689, 703 (1992). Ankenbrandt did not apply Rooker-Feldman, but instead, in the context of federal diversity jurisdiction, broadly discussed the "domestic relations exception"—which "encompasses only Analysis After the Supreme Court's Exxon Mobil Decision, 2006 Fed. Cts. L. Rev. 1 (May 2006).

Cases involving the issuance of a divorce, alimony, or child custody decree." Id. at 704. The Ankenbrandt Court concluded this exception was not applicable (and therefore did not divest subject matter jurisdiction pursuant to 28 U.S.C. § 1332) where the lawsuit did not seek such a decree, but instead alleged that defendants committed torts against children. Id. Here too such an exception regarding domestic relations is inapplicable to a number of the Behrs' constitutional and tort claims, which are all independent from the custody determination.

Although the District Court did not analyze a single case that applied the Rooker-Feldman doctrine to claims relating to family court and custody proceedings, this Court has had a number of occasions to address the propriety of such applications. The Court recognized that the Rooker-Feldman doctrine may deprive federal courts of subject matter jurisdiction related to child custody. Emphasizes that closer analysis was required to determine whether the claims (and which ones) in that case were barred. Id. at 1333.

Goodman distinguished two Eleventh Circuit cases, Liedel v. Juvenile Court of Madison Cty., Ala., 891 F.2d 1542 (11th Cir. 1990), which held a mother's request for reinstatement of parental custody and psychiatric care was essentially a challenge to the final state court judgment, and Staley v. Ledbetter, 837 F.2d 1016 (11th Cir. 1988), which held that a request by parents for a temporary restraining order and injunction against state agencies to prevent them from enforcing a juvenile court's order would effectively nullify those orders. The Court noted that those "holdings alone do not tell us which of the three claims brought by the plaintiffs in this case are barred" and that those cases "involved far more direct attacks on the previous state court judgment than the claims in this case do." Goodman, 259 F.3d at 1333. As discussed further below, the Court concluded that the Rooker-Feldman doctrine was improperly applied to the unreasonable search claim and remanded for the district court to consider the claim's merits in the first instance. Id. at 1334–35 & n.8. Kim Goodman, on Her Own Behalf and on Behalf of Her Minor Child, Michael Goodman, Plaintiff-appellant, v. Patricia Sipos and D'anna Liber, Defendants - Appellees, 259 F.3d 1327 (11th Cir. 2001).

Kim Goodman, on Her Own Behalf and on Behalf of Her Minor Child, Michael Goodman, Plaintiff-appellant, v. Patricia Sipos and D'anna Liber, Defendants - Appellees, 259 F.3d 1327 (11th Cir. 2001): https://law.justia.com/cases/federal/appellate-courts/F3/259/1327/575693/

Similarly, in Christophe v. Morris, the Eleventh Circuit concluded that the district court erred by dismissing all of the plaintiff's claims as barred under the Rooker-Feldman doctrine. 198 F. App'x 818, 827 (11th Cir. 2006). https://casetext.com/case/christophe-v-morris-2

This Court affirmed the dismissal of "the majority" of Elaine Christophe's claims, but concluded that her challenge regarding the manner in which the eviction was carried out was not

inextricably intertwined with the eviction. Id. at 825–26. This Court reversed the district court with regard to the illegal seizure claim, leaving it to the district court to decide the merits of the claim on remand. Id. at 827; see also Kohler v. Garlets, 578 F. App'x 862, 864 (11th Cir. 2014) ("Construed liberally, Mr. Kohler's complaint could also be read to raise an independent damages claim against Ms. Garlets and her attorneys based on alleged misconduct during the state foreclosure proceedings. . . . Because a challenge to the defendants' conduct in state proceedings does not necessarily seek appellate review and reversal of the state court judgment, the district court erred in ruling that such a claim was barred by the Rooker-Feldman doctrine.").

Here, as in Goodman and Christophe, many of the constitutional and tort claims asserted by the Behrs—including allegations of unreasonable search and seizure—were even more remote from the state court judgments than those asserted in Liedel and Staley, and should not have been dismissed under Rooker-Feldman. The District Court's sweeping dismissal with prejudice of the entire Complaint with no analysis applying the narrow Rooker-Feldman standard to the individual claims provides basis alone for reversal.

B. The District Court Has Subject Matter Jurisdiction Over A Number Of The Claims

1. Procedural Due Process Claim (Count 2)

The Behrs allege procedural due process violations resulting from the use of falsified and/or coerced information as a basis for the proceedings and decisions and the restriction of access to the courts and denial of adequate legal counsel with regard to the children. DE 56 ¶ 78. The Behrs bring this claim under 42 § U.S.C. 1983. Id. ¶ 81.

In Goodman, this Court concluded that the district court lacked jurisdiction under Rooker-Feldman over two due process claims by a parent (on her own behalf and on behalf of her minor child) who lost custody of her child. 259 F.3d at 1334. Goodman asserted violation of her due process rights based upon allegations that (1) a caseworker's affidavit was false and the state court had held ex parte proceedings, and (2) the caseworker had threatened a family friend with arrest if he did not return the child. The Court held that the two claims were inextricably intertwined with the state court orders and judgment because the first claim would succeed only to the extent the state court wrongly decided the custody issue and the second claim was based on the same factual and legal predicate as a motion the plaintiffs filed to have the child returned to the family friend's custody. Id. at 1334.

In the context of custody proceedings, sister circuits have held that Rooker-Feldman would not bar allegations that discrimination motivated a decision to remove a child from a home. In Phifer v. City of New York, for example, the Second Circuit concluded such a discrimination claim was not barred because the state court did not decide the issue. 289 F.3d 49, 58 (2d Cir. 2002) (citing Ernst v. Child and Youth Servs. of Chester Cty., 108 F.3d 486, 492 (3d Cir.

**CONCLUSION:**

For the reasons stated above, Plaintiffs-Appellant Randall Collier respectfully request that the Court reverse the District Court's dismissal with prejudice of the Second Amended Complaint and remand for immediate and proper proceedings.

---

**WHEREFORE, the Plaintiff respectfully requests that the Court:**

A. Remand this case back to the District Court with no further delay to immediately apply the correct legal standards as the US Appeals Court Order in Behr v. Campbell (2021) US Appeals Case.

B. Insure the lower court is properly instructed how to "liberally construe" this "pro se Plaintiffs" arguments, to avoid the prohibitions caused by this "Rooker-Feldman Doctrine" used to dismiss this case, which only specifically prohibit acting as an "Appeal" and challenging the final decision(s) of the NH State Court(s).

C. Insure the focus is instead upon the process leading up to any "final decision" and the entire New Hampshire "Family Court" process, and its initial legitimacy (how it was originally established is in question), as well as that of the NH Supreme Court and JCC which denied this Plaintiffs Appeals, often without even giving reason(s). So to "liberally construe" the arguments herein requires they be "construe(d)" as challenges upon the "constitutionality" of the entire New Hampshire State Court system and process(es) and procedure(s) this Plaintiff has experienced in New Hampshire State Supreme Court, Family Court, and Judicial Conduct Committee. These are 'deprivations of rights under color of law", "torts", etc., similar to those explained in said case, Behr v. Campbell (2021), which require the US District Court to explain on public record why each of this Plaintiffs (15) Claims are valid or not, in said revised Civil Complaint.

D. To instruct the NH District Court to advise these plaintiffs exactly why they ignored the previous Behr Case ruling and continued to dismiss after it was noted the previous court erred in their decision to blanket dismiss.

**TABLE OF CITATIONS (And 'Other Authorities'):**

1) See, "House Special Committee on the Family Division of the Circuit Court (05/02/23)", see 2hrs and 2h17m, Randall Collier and Paula Werme speaking:
https://www.youtube.com/watch?v=jVjJumYj6_w

2) See, AN ACT establishing the New Hampshire circuit court to replace the current probate courts, district courts, and judicial branch family division. Approved, May 16, 2011, Effective Date, July 1, 2011: https://www.gencourt.state.nh.us/legislation/2011/HB0609.html

3) See, House Judiciary & Children and Family Law Joint Committee Meeting (03/28/23):
https://www.youtube.com/watch?v=vbFOdcRT_XA

4) United States Court of Appeals, For the First Circuit, Rulebook, Rule 28. Briefs, (a) Appellant's Brief:

did appear before me, and proved to be the man/woman executing this document.

Notary Public Signature, Printed Name, and Stamp:

Lydia Hurley
NOTARY PUBLIC
State of New Hampshire
My Commission Expires 5/3/2028

_Lydia Hurley_ ,

My commission expires: _5/3/2028_ .

## TABLE OF CITATIONS (And 'Other Authorities'), Continued:

1) Thomas D. Rowe Jr. & Edward L. Baskauskas, "Inextricably Intertwined" Explicable at Last? Rooker-Feldman Analysis After the Supreme Court's Exxon Mobil Decision, 2006 Fed. Cts. L.

Rev. 1 (May 2006).;

2) SUPREME COURT, Washington v. Glucksberg, 521 U.S. 702 (1997), that the Constitution, and specifically the Due Process Clause of the Fourteenth Amendment, protects the fundamental right of parents to direct the care, upbringing, and education of their children.;

## CERTIFICATE OF COMPLIANCE:

The undersigned attorney hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and First Circuit Rule 28-1. Excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 12,508 words and uses a Times New Roman 14 point font and contains 572 lines of text.

https://www.law.cornell.edu/rules/frap/rule_32#:~:text=(B)%20Type%2DVolume%20Limitation.

## CERTIFICATE OF SERVICE:

I HEREBY CERTIFY that on July 31, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record this day via transmission of Notices of Electronic Filing generated by CM/ECF to: [Electronically Filed per rules of procedure and Courts guidance]

## SIGNATURE, STATEMENT OF TRUTH, NOTARY SECTION:

I hereby declare under penalty of perjury the foregoing is true to the best of my knowledge,

_Randall S. Collier_ 9/13/24

[Signature, Printed Name of Claimant, Date Signed]

## NOTARY STAMP & SIGNATURE, ACKNOWLEDGMENT:

Subscribed and affirmed to before me,

_Lydia Hurley_ , a

Notary Public, this 13 day of September , 2024 , that the above-named man/woman

**TIMELINE OF EVENTS:**

Three (3) Laconia, NH Police reports were generated / created prior to the 5 page Domestic Violence Petition.

11/18/12, "there was a verbal disagreement about his civil right to have a gun for protection as his constitutional right". May stated "there was no physical contact between them and I did not observe any evidence of assault.".

11/23/12, "Ms. May reiterated the information I received from Mr. Collier earlier". Police did not view Collier as a threat, just 2 people with different views, Ms. May confirmed "no threat or harm in any way"..; Ms. May was fearful Mr. Collier went to Keene to get his gun and bring it home". May told Mr. Collier, "she does not want weapons in the home".

12/02/12, I called Mrs. May to inquire if she had been able to resolve any of her concerns. May stated Collier agreed to see a counselor and they are taking it one step at a time. "There will be no further police assistance with this request, an emergency order of protection was not required and the situation is in process of being resolved";

12/13/12, Collier served at the residence. I read him the order and he stated he understood. Collier said he did not own any weapons and I checked the home with negative contact and Collier left on foot;

**12/13/12, Plaintiff (Mr. Collier) was escorted off the property and away from my son. Today is 03/19/24. 11 years and counting with custody of my son.**

12/13/12, 5 page Domestic Violence Petition, based upon allegations of "harassment", "abuse", "threatening", without "probable cause", or any actual "criminal prosecution"; 11 days after the police noted "an Emergency Order of protection was not required", the allegations from Ms. May in her 5 page DVP was "while I was in the courthouse, I learned a neighbor saw Mr. Collier secretly bring a weapon/ gun into the house without telling me". "Mr. Collier is disassociated with reality, paranoid, erratic, inconsistent, volatile, unstable, hurt our son's development, obsessed with the truth, and guns. It started at the election and has truly escalated since thanksgiving".

12/13/12, Officer Benjamin C. Black escorted Randall from residence with "negative contact" (no firearms or weapons found), despite her (Hillary May's) fear there was a gun in her house, none was found when police escorted Randall from residence.;

12/18/12, Ms. May reassured the court she wasn't threatened or intimidated to withdraw the Domestic Violence Petition, and a no contact letter served by Ms. May requested Mr. Collier has no further contact with her or T.C. and she is in the process of filing a parental agreement. This is despite the (shared child and equal parental responsibilities);

1/24/13, Stalking / Parenting Petition and DV Temporary 'Protective Order';

1/27/13, page 2 Order from 1/24/13 hearing, 'Order after hearing on request for emergency relief',:
The records reflect that both parties were actively involved in the visit and T.C. interacted well with each of them during the visit". The statements from third parties submitted by Mr. Collier reflect "that this was a happy family and that Mr. Collier and T.C. were very close and Mr. Collier appeared to take good care of T.C.". page 3 "There are no concrete threats from Mr Collier either towards Ms. May or towards T.C.. Nor do the text contain any specific inferences that Mr. Collier intends to take T.C. away from Ms. May or take him into the woods". page 4: Mr. Collier's statements and behaviors reflecting these growing beliefs are worrisome and scary to Ms. May, who now doubts his capacity to provide a safe and nurturing environment for T.C., not because he lacks the skills, but because he is distracted and scattered by these external worries." " For the purpose of this Order, the court has not taken the allegations into account except to note that the Petition does not allege any overt threats or specific acts of violence". Review: Ms. May advises the Administrative Court instead of a Criminal Court (through a Domestic Violence Petition) she is worried that I am distracted, not that she was an injured party.

2/1/2013, hearing for 'Domestic Violence Final Order of Protection', see below 2/4/13.;

2/4/13, "DOMESTIC VIOLENCE FINAL ORDER OF PROTECTION" issued (4pgs). This order of protection is in effect from 2/4/13 until 2/03/14.;

2/4/13, "FINDINGS OF FACT FOR DOMESTIC VIOLENCE FINAL ORDER" (2 pgs.). A "DOMESTIC VIOLENCE FINAL ORDER OF PROTECTION" was issued by the court on Jan 24, 2013. "The parties are involved in a concurrent parenting litigation with this court. The Petitioner appeared for the Final Hearing with counsel and the Respondent appeared pro se.". "The petitioner testified that the Respondent has become disassociated with reality". "The Petitioner testified that the training of the dog is abusive in the use of physical force to teach the dog. The Petitioner fears that the Respondent will use those kinds of training tools against their son as he gets older." "The Petitioner submitted a physician's wellness examination of T.C. which shows the boy is doing fine." Apparently the order on 2/4/13 refers INCORRECTLY to one on 1/24 when it SHOULD refer to the hearing on 2/1/2013 instead, FYI.;

3/15/2013 Completed a Family Court ordered Psychological evaluation. The findings included "Mr. Collier knows right from wrong, appears oriented to reality, not a danger to self or others, counseling recommended specific to alcohol and drugs.; Review, recommendations have nothing to do with the allegations against me. This recommendation (only) is professional testimony and proves I am a fit Parent.

4/04/2013 page 2 "He consistently requests, then demands that she compromise with him, but there is no evidence of any revolving position on his part. See email from Ms.May's paralegal DMayo " You keep asking for her to compromise. What compromises would you like Ms. May to make? She will never agree to 50/50 custody with you. What would you propose the outcome of this case to be? " Review: medical records contradict allegations, no probable cause of intent to injure.

5/05/2013 letter from Daron Friedman, MA, LCMHC, MLADC " Since Mr. Collier completed his evaluation (03/15/2013) he has been actively participating in counseling. Mr.Collier is facing a number of very difficult issues, some related to the deterioration of his relationship, recent difficulties related to employment, a new living situation, and the loss of his son (no contact in over 77 days). Given the information available to me at this time I would recommend Mr. Collier attend counseling. The frequency and duration of treatment would need to be explored over time". Review: Again only recommended and only because of the allegations, not to support the allegations. Again, No findings of being an unfit father.

8/30/2013, Narrative on Parenting Decree case number 650 2013 DM 10 page 6 " Taken along with the need for continued counseling reflected in Mr. Collier's own psychological evaluation, these factors suggest Mr. Collier's parenting time should continue to be supervised until there is evidence he can manage his emotions, understand other people's positions, and adequately provide a safe and healthy environment for his son. Ms. May's Parenting plan is somewhat complex, but it has the virtue of transparent detail, and it is probably more detailed than the plan the court might impose, and this is a positive, because Mr. Collier will be able to understand exactly what is expected of him, and with patience he may well be able to progress according to the plan". Ms. May is awarded sole decision making responsibilities of T.C. because of the Domestic Violence protective order, which effectively prevents the parties from communicating with each other, and because the court doubts Mr. Collier's present capacity to communicate with Ms. May in a civil and healthy way, given his pleadings to date". Review: Counseling was recommended because of the allegations, not to support the allegations.

2/25/14 Ms. May testifies the defendants failure to comply with the court orders that he not file duplicative or frivolous motions as evidence that he is unable to comply with orders and concludes from that he presents a continues danger to her, the court does not agree that his relentless filings reflect an intent to inflict fear on the Plaintiff, rather they reflect his determination to change court order by repetition of same allegations" The court extended protective order one year because " Under the unique circumstances of this case, in which the plaintiff reasonably hired counsel partly to act as an intermediary to communicate with defendant, reflects that defendant respected neither the plaintiffs expectation of privacy nor the courts order prohibiting direct contact, and therefore it constitutes good cause to extend the Protective Order which Ihereby extended to February 2.2015.
Review: Order 2/4/13 The Court noted Ms. May was in reasonable fear without actually being an intended target of harm or ill intent. Defending oneself by writing words on paper creates fear in the person making the allegations. The court noted "the plaintiff hired counsel to communicate with the defendant". If defending oneself creates fear in the person making the unfounded allegations, I am not the one that needs professional assistance.

2/27/2015, "The court and our Constitutions' guarantees of Due Process for each litigant are preserved for the parties to exercise their rights to be heard regardless of forum or venue. The petitioner has found the Respondent to be irrational with his representations on social media. Counsel argues that the change of address, resulting in his residency, a community in close proximity to the petitioner's community created further apprehension on the part of the petitioner, the petitioner did not cite such apprehension". The court noted that the Protective Order extension request is in no way intended to prohibit the Respondent from contacting his son. The

court has detailed a process of contact between the respondent and his son. The court has ordered the Respondent to initiate contact with his son in a supervised setting. Respondents actions of not responding to the court orders mental health counseling, his disrespect observance of petitioners desire of sole contact be through her counsel, his obsessive use of postings which are troublesome and his affinity to firearms especially in a relationship as exemplified by the december 18,2014 posting of " every missed bullet gives much more than conjecture for the court to base a five year extension of the protective order. Specifically the court finds these factors evidence a reasonable basis for the court to conclude that such conduct constitutes a credible present threat to the petitioner's safety and well being". The court has taken all of these considerations into determination that the protective order is to be extended for five years". (See Claim 8)

Review: The Administrative Court Guarantees Due Process by denying access to evidence? We didn't agree on anything and I didn't sign any contract. If Ms. May is not named as the intended target of harm in the photo, there is no credible threat as this does not meet the state statute even used against me. One can not Guarantee Due Process and have Rule 2.2 " Rules of Evidence do not apply" . So, there is no evidence submitted to meet the elements of criminal statutes.

A fair and orderly hearing concluded with a significantly restricted, complex and detailed parenting plan in favor of Ms. May after her allegations were unfounded. This appears fair and orderly and in the best interest of the minor child.

8/30/13 NPD page 6 " Taken along for the need for continued counseling reflected in Mr. Collier's own psychological evaluation, these factors suggests that Mr. Collier's parenting time should continue to be supervised until there is evidence that he can manage his emotions, understand other people's positions, and adequately provide a safe and healthy environment for his son". See 5/5/13 updated counseling document " counseling recommended because it has been over 77 days without seeing his son". Why doesn't the Order match the medical records that were submitted? If the Domestic VIolence Petition allegations were unfounded by the medical records, how would anyone understand that person's positions? This idea by the court I objectively am in need of supervised visits to cooperate with false allegations. However the alledger who gave false allegations gets Sole Custody and Decision making over T.C. This is a fair and Orderly Decision and in the best interest of the MInor child? Why is Evidence not needed to restrict parental rights? Our rights don't simply evaporate.

Definition of Credible Threat: "A threat made with intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his safety. The threat must be against life, or a threat to cause great bodily injury to a person".

04/2015 Ms. May's Letter of intent to Relocate to North Carolina within 60 days. See Claim 9 on 08/24/2017 "The distance wouldn't allow for shared residential schedule".

11/8/15 DM 10 page 4 "Second, the transitional period including supervised visitation is designed to take place over a period of 4 years before Mr. Collier would have one weekend a month two overnights of parenting time unsupervised with T.C. and would not be able to to have parenting time with T.C. in NH for almost 6 years. This is a lengthy period of time of significant constriction of the normal parenting relationship even for long distance relationships, begging

the question whether risks warrant such an extension of time, particularly when, per the parties reports, the visits and calls have all gone well". Up to this point, no threats or violence in the 5 page DVP, no harassing text messages were submitted, both father and son's medical evaluations contradict the allegations brought forth by Ms. May,and all calls and visits have gone well.

Awarded Modified Parenting Plan 11/08/15 page 2 of 5 of the additional pages " This professional counseling shall have a focus on appropriate and safe parenting skills for the father so that he can progress to the next level of parenting time and does not pose a threat physically or emotionally to T.C." No evidence noted by the court to support probable cause of being a threat to T.C.

Review: See Order 8/30/13 "Ms. May's parenting Plan is somewhat complex but has the virtue of transparent detail, and it is probably more detailed than the plan the court might impose, and this is a positive because Mr. Collier will be able to understand exactly what is expected of him, and with patients he may well be able to progress according to the plan". Why are there any expectations of me from the State when no crime was committed?

8/24/2017 Motion to Modify Parenting Plan Denied. See Claim Nine (9)
Review: Three (3) different medical evaluations have now contradicted the allegations. Why deny modification if these are the facts?

2/28/2020, Mr. Collier was found in contempt of court for having his cousin send a package to Ms. May containing a gift which Mr. Collier had purchased for T.C., resulting in an extension of the Protective Order for (5) Five Years more; Review: It was never proven in a Court of Law I threatened or coerced anyone to do anything.

2/28/2020, Mr. Collier to pay $2,808.13, for an arrest warrant issued by Belknap County, Family Court, 4th Circuit Court, N.H., due to not paying Court Ordered Lawyer fees, which is a violation of "Debtors Prisons" laws, which prohibit imprisonment for debt ('except in cases of fraud' in some Constitutions);

3/2/2022, This North Carolina arrest warrant here was issued by Wake County, Family Court, N.C., due also to not paying legal fees, therefore "unconstitutional" See File Number 19CVD3939 Family Court Civil Order for Arrest

The Fourth Amendment prohibits law enforcement officers from arresting citizens without probable cause. See, Illinois v. Gates, 462 U.S. 213 (1983), therefore, no body attachment, bench warrant or arrest may be issued. Illinois v. Gates:
https://supreme.justia.com/cases/federal/us/462/213/

"By definition, probable cause to arrest can only exist in relation to criminal conduct; civil disputes cannot give rise to probable cause. U.S.C.A. Const.Amend. 4.":
https://uk.practicallaw.thomsonreuters.com/

If a person is arrested on less than probable cause, the United States Supreme Court has long recognized that the aggrieved party has a cause of action under 42 U.S.C. §1983 for violation of Fourth Amendment rights. Pierson v. Ray, 386 US. 547, 87 S.Ct.1213 (1967).
https://supreme.justia.com/cases/federal/us/386/547/

"Harlow v. Fitzgerald, 457 U.S. 800, 818, there can be no objective reasonableness where officials violate clearly established constitutional rights such as– (a) United States Constitution, Fourth Amendment (including Warrants Clause), Fifth…":
https://supreme.justia.com/cases/federal/us/457/800/

5/09/2022 NH District Court Deprivation of Rights Under Color of Law Civil Complaint

1/3/2023, New Hampshire House Bill 185, Introduced on January 3 2023, passed in House 1/3/2024: https://legiscan.com/NH/bill/HB185/2023
1/31/2023 NH District Court Case Dismissed
2/21/2023 NH District Court Case Closed
3/28/2023, Testimony at the State House (This is a public hearing so everyone can see).  See, "Select Committee" Testimony and Justice (Mr) Michael Garner's speech, about "Rules of Evidence don't apply in Family or DV cases", due to lack of trial by jury (which is just another violation of Constitutional due process of law here), and that judges are the "gatekeeper for what they hope is reliable information", at the 44 minute mark here:
 House Judiciary & Children and Family Law Joint Committee Meeting (03/28/23):
https://www.youtube.com/watch?v=vbFOdcRT_XA ;
 After Michael Garner warned the Legislative body about altering their practice, they made a bill that requires rules of evidence in family court. See NH hb499, Rules of Evidence to apply in Family Cases (Will be voted on Jan.3):
https://legiscan.com/NH/bill/HB499/2023 ;
 House Special Committee on the Family Division of the Circuit Court (05/02/23):
https://www.youtube.com/watch?v=jVjJumYj6_w ;
 House Special Committee on the Family Division of the Circuit Court (05/16/23):
https://www.youtube.com/watch?v=TppRpmPCm7U ;

4/14/2023  NH Supreme Court Writ of Certiorari
6/26/23 NH Supreme Court Motion For Reconsideration of Denial of Petition for Writ of Certiorari
12/19/2023, NH Family Court. Ms. May must be present at the next NH Family Court  hearing on 1/10/24 to enforce the Protective Order, in response to her recent motion to remotely attend the next hearing to enforce it.

## 4/16/2024 Order on Pending Motions. This is a Final Order ( Motion to dismiss protective order):
Page 1 mentioned" the evidence submitted in the DV case" and then mentions on page 6 there was no evidence.
page 4 "Ms. May had to be present in the 1/10 hearing to hear her motion on violating the protective order and to order a capias".  "At the onset of the January 10th Hearing I Declined a copy of the federal Lawsuit against me from Mr. Collier". The Attorney General's Office has since accepted service.
Page 5 " The Family Division has Subject Matter Jurisdiction to enter Civil Protective Orders"

Paragraph 2 "The Court had authority to hear the case, both parties were heard at each stage, and the proceedings complied with Due Process".

Page 5 "how the parenting case has nothing to do with the DV Order". Review the 8/30/13 NPD page 6 notes "Ms. May is awarded Sole decision making responsibility of T.C. because of the Domestic Violence Protective Order" see also claim 9 on page 18 where Judge Garner noted "the geography would not permit a shared parenting agreement".

Review: No possible way to communicate with Ms. May in regards to exchanging T.C between the parties with the DV order in place. And furthermore, Judge Garner allows Ms. May to relocate 700 miles away and then uses this as an excuse to deny modification of the protective order. Again, you can't have it both ways.

Page 6 Judge Garner noted he "wasn't the one who originally presided over the DV Case, but he did extend the protective orders a few times". "The State has an interest when parties can't agree".

Review: I have the letter from the beginning of this matter that Ms. May wrote "you will never get 50/ 50 shared custody". In Ms. May's DV Petition the court noted no threats or violence noted in her DV Petition or her submitted text messages". The DV Case was then Dismissed.

In the Parenting Case, Ms. May was awarded sole custody and decision making of T.C. the allegations of being obsessed, erratic, irrational, paranoid, unsafe, hurting T.C's development and making it difficult to perform his evaluation were unfounded by the submitted medical records. The court noted no threats or violence noted in the Domestic Violence Petition submitted by Ms. May. What is the state's interest that supports sole custody and decision making for Ms. May?

"The traditional presumption that the parents act in the best interests of their child should apply.", Parham v. J.R., 442 U.S. 584 (1979),
https://supreme.justia.com/cases/federal/us/442/584/

Troxel v. Granville, 530 U.S. 57 (2000); "There is a fundamental right under the Fourteenth Amendment for a parent to oversee the care, custody, and control of a child.",
https://supreme.justia.com/cases/federal/us/530/57/

Page 8. " Mr.Collier did not deny authoring the emails or making the phone call statements". I did not consent either. Page 5 noted "Rules of Evidence do not apply".

This is not a criminal court and evidence does not apply. No text messages were ever submitted as evidence to support meeting the elements of harassment.

History shows Judge Garner's misconceptions of the rules of evidence and how they are applied appears to only favor Ms. May.

Page 9 "Mr. Collier's disagreement with those orders does not permit him to ignore them". State v Small, 150 NH 457 (2004)

Review: Circuit Court Family Division is neither a Constitutional or Criminal Court. It is an Administrative hearing and not judicial in nature. See Also Madbury V Madison 1803 "any law

repugnant to the Constitution is null and void". I did not break any law therefore it is my responsibility to ignore any and all unlawful administrative orders.

Page 10 "No Capias Ordered. Order legal fees and travel expenses for Ms. May to be paid by Mr. Collier".

Page 11 " This is a Final Order and subject to appeal " SIgned Michael Garner.

Review: I appealed my parenting plan twice to the NH Supreme Court. I also submitted a Writ of Centouri to NH Supreme Court. All three of these were previously denied. Evidence is not applied to the parenting cases or domestic violence cases per NH Family Division Rule 2.2. If this order is subject to appeal, and the court refuses to use evidence to support their findings, what good is a fourth attempt to appeal? Judge Garner told Ms. May she had to be present in the courtroom to hear her motion for capias. I did not get arrested, therefore I am not responsible for her expenses. Again, this is not a criminal court. No sanctions can be levied against me.

## ALSO NOTE THIS TIMELINE FOR THREE(x3) "Judicial Complaints" mentioned herein:

08/29/2014, Filed Ethics Complaint, with State of NH Executive Branch, Ethics Committee;

08/30/2014, Complaint to NH Admin Judge Kelly, to investigate Laconia Family Court and their findings in reference to our hearings;

Filed with NHJCC:
06/05/2014, 1st complaint filed, jc-14-031-G;
08/11/2014, complaint jc-14-0313-G dismissed;
09/17/2014, reconsideration of dismissal filed;
11/17/2014, reconsideration denied;

09/16/2015, Filed Redress of Grievance; NH House of Representatives.

11/03/2017, 2nd complaint filed, jc-17-057-G, acknowledge receipt of cover letter with supporting documents;
12/11/2017, Voted to dismiss complaint, jc-17-057-G;

06/15/2020, 3rd complaint filed, jc-20-031-G, acknowledgment of cover sheet and supporting documents;
07/13/2020, jc-20-031-G, alleged misconduct complaint Dismissed;

07/30/2020, "Judicial Conduct Complaint_July_30,2020_Re-JC-20-031-G", filed;
9/14/2020, reconsideration of jc-20-031-G denied;

11.28.2020, Letter to NH Supreme Court, regarding prev. Complaints_nhjcc2020, sent;
11/30/2020, filed motion for "Reconsideration" of 6/15/20 complaint, jc-20-031-G;
12/02/2020, acknowledge of receipt of second request for reconsideration;

01/11/2021, reconsideration of jc-20-031-G Denied;

If this JCC noted they don't have jurisdiction over Administrative Court Judges, (recent new evidence acquired) why acknowledge receipts and dismissals Gaslighting "We the People".

01/25/2021, Formal Complaint to Admin Judge Keating, against Michael Garner of Laconia family Court, for "interject[ing] law into medicine", as stated in said complaint. This complaint includes hypothetical order(s) (without supporting evidence) / findings, as well contradicting medical records.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Randall Collier

     v.                          Case No. 24-cv-15-JL-AJ

James M. Carrol, et al.

### ORDER

After due consideration of the objection filed, I herewith approve the Report and Recommendation of Magistrate Judge Andrea K. Johnstone dated May 15, 2024.

                                   Joseph N. Laplante
                                   United States District Judge

Date: June 24, 2024

cc:  Randall Collier, pro se
     Nathan W. Kenison-Marvin, Esq.

Randall S. Collier

     v.                           No. 24-cv-15-JL-AJ

James S. Carroll, et al.

## REPORT AND RECOMMENDATION

Self-represented plaintiff Randall S. Collier has sued New
Hampshire state court Judges James Carroll and Michael Garner,
and the New Hampshire Judicial Conduct Committee ("JCC"). Mr.
Collier alleges that the defendants, individually or
collectively, committed various torts and Constitutional
violations against him during the pendency of a state court
domestic relations matter involving Mr. Collier and his family.
The defendants have filed a motion to dismiss, (Doc. No. 11), to
which Mr. Collier has objected (Doc. No. 12).[1] The defendants'
motion has been referred to the undersigned Magistrate Judge for
a Report and Recommendation. See 28 U.S.C. § 636(b)(1)(B); LR
72.1.

---

[1] Mr. Collier filed a single document containing both his
objection to the defendants' motion and a "revised Civil
Complaint." To the extent Mr. Collier was seeking leave to file
an amended complaint, the single filing violated LR 7.1(a)(1).
Nevertheless, in deference to his pro se status, the court will
treat Mr. Collier's "revised" complaint as an addendum to his
original complaint and analyze the defendants' motion
accordingly.

## Factual Background and Procedural History

Mr. Collier's claims in this case stem from judges' decisions regarding "an invalid domestic violence protective order and parenting plan and sole decision-making responsibility for the mother only" in the New Hampshire state court case In the Matter of Hillary May and Randall S. Collier, No. 650-2-13-DM-00010 (4th Cir. Ct., District Division, Laconia). See Compl. Add. (Doc. No. 12) ¶¶ 6, 17. He has sued the judges in that case and sued the JCC for failing to take action against those judges. He asserts fifteen separate claims, based on the judges' acts and the JCC's inaction. Id. ¶¶ 17-52. Mr. Collier seeks relief in the form of monetary damages "near $70M" and an Order from this court to vacate the state court's orders. Id. at 31.

In 2022, Mr. Collier filed a nearly identical lawsuit in this court. See Collier v. Carroll, et al., Civ. No. 22-cv-162-LM (D.N.H. filed May 9, 2022). On January 31, 2023, Judge McCafferty granted the defendants' motion to dismiss, based on lack of subject matter jurisdiction. Id. Order (Doc. No. 22). Specifically, Judge McCafferty held that Mr. Collier's lawsuit was, in effect, an appeal from the New Hampshire state court rulings described above and was, therefore, barred by the Rooker-Feldman doctrine. Id. at 2-3. There being little or no meaningful difference between this lawsuit and Mr. Collier's

2

previous suit against these defendants, the same result is warranted here.

## Rooker-Feldman Doctrine

Under the Rooker-Feldman doctrine, this Court lacks subject-matter jurisdiction to review the decisions of state courts if the underlying matters are concluded. This doctrine precludes a federal action if the relief requested would effectively reverse or void a state court decision, or if the plaintiff's claims are "inextricably intertwined" with the state court action. See Johnson v. De Grandy, 512 U.S. 997, 1005-1006 (1994); Exxon Mobil Corp. v. Saudi Basic Industries Corp., Inc., 544 U.S. 280 (2005) (doctrine applies to cases by state court losers seeking review and rejection of state court judgments rendered prior to commencement of federal suit).

Here, Mr. Collier explicitly asks this court to reverse state court rulings because, he believes, they were incorrect, unconstitutional, or corrupt. This court does not have jurisdiction to do so, and the action should, therefore, be dismissed. See Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009)(affirming dismissal of action relating to custody of child for lack of subject matter jurisdiction under Rooker-Feldman doctrine); see also Dempsey v. Massachusetts State, 959 F.2d 230, 1992 WL 60438, at *1 (1st Cir. 1992) (unpublished) ("[F]ederal district courts do not sit as 'super appellate

3

courts' reviewing errors allegedly committed by a state court.")
(citation omitted).  For the same reasons, Mr. Collier's motion
for summary judgment (Doc. No. 10) should be denied.

## Conclusion

Based on the foregoing, the district judge should grant the
defendants' motion to dismiss (Doc. No. 11) based on lack of
subject matter jurisdiction and deny plaintiff's motion for
summary judgment (Doc. No. 10). Any objections to this Report
and Recommendation must be filed within fourteen days of receipt
of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day
period may be extended upon motion. Only those issues raised in
the objection to this Report and Recommendation are subject to
review in the district court. See Sch. Union No. 37 v. United
Natl Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not
preserved by such objection(s) are precluded on appeal. See id.
Failure to file any objections within the specified time waives
the right to appeal the district court's order. See Santos-
Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

**SO ORDERED.**

_Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge

May 15, 2024

cc:  Randall Collier, pro se
     Nathan W. Kenison-Marvin, Esq.