**United States Court of Appeals**
**For the First Circuit**

_____

No. 24-1657

RANDALL COLLIER,

*Plaintiff – Appellant,*

v.

JUDGE JAMES M. CARROLL; JUDGE MICHAEL GARNER; NEW
HAMPSHIRE JUDICIAL CONDUCT COMMITTEE,

*Defendants – Appellees.*

Appeal from a Judgment Entered by the
United States District Court for the District of New Hampshire

**BRIEF OF APPELLEES**
**HON. JAMES M. CARROLL, HON. MICHAEL GARNER, AND NEW**
**HAMPSHIRE JUDICIAL CONDUCT COMMITTEE**

By their attorneys,

JOHN M. FORMELLA
ATTORNEY GENERAL

and

ANTHONY J. GALDIERI
SOLICITOR GENERAL

By:  Nathan W. Kenison-Marvin, Bar No. 1201546
Assistant Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, NH 03301
(603) 271-3650
nathan.w.kenison-marvin@doj.nh.gov

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ..........................................................................4

STATEMENT OF THE ISSUES..........................................................................5

I.    THE UNDERLYING DOMESTIC RELATIONS PROCEEDINGS IN NEW HAMPSHIRE CIRCUIT COURT ......................................................6

II.    MR. COLLIER'S FEDERAL ACTIONS....................................................7

    a.    The First Action ................................................................................7

    b.    The Second Action ............................................................................9

SUMMARY OF THE ARGUMENT ....................................................................12

ARGUMENT ......................................................................................................13

I.    THE DISTRICT COURT CORRECTLY RULED THAT IT LACKED SUBJECT-MATTER JURISDICTION UNDER THE *ROOKER-FELDMAN* DOCTRINE .........................................................................13

CONCLUSION....................................................................................................23

CERTIFICATE OF COMPLIANCE....................................................................24

CERTIFICATE OF SERVICE .............................................................................24

# TABLE OF AUTHORITIES

## Cases

*Ankenbrandt v. Richards*, 503 U.S. 689 (1992).........................................................18

*Behr v. Campbell*, 8 F.4th 1206 (11th Cir. 2021) ........................................... passim

*Dempsey v. Massachusetts State*, 959 F.2d 230, WL 60438, at *1 (1st Cir. 1992).11

*East v. Lake County Sheriff Dep't*, Cause No. 2:14cv058 PPS JEM, 2015 U.S. Dist.

    LEXIS 120272, at *11–12 (N.D. Ind. Sept. 9, 2015) ...........................................15

*Efron v. Candelario*, 110 F.4th 1229 (11th Cir. 2024) ...........................................22

*Ellison v. Brock*, 122 Fed. Appx. 519 (1st Cir. 2004) ...........................................22

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)........ 8, 11, 13

*Federacion de Maestros de P.R. v. Junta de Relciones del Trabajo de P.R.*, 410

    F.3d 17, 24 (1st Cir. 2005).........................................................................14

*Fox v. Lederman*, Case No. 17-21223-CIV-Moore/Simonton, 2018 U.S. Dist.

    LEXIS 11539, at *8 (S.D. Fl. Jan. 23, 2018).........................................................14

*Hill v. Town of Conway*, 193 F.3d 33 (1st Cir. 1999)................................................8

*Johnson v. De Grandy*, 512 U.S. 997 (1994)..........................................................11

*Johnson v. Salmon*, Civil Action No. 15-11781-DJC, 2016 U.S. Dist. LEXIS

    73390, at *8–9 (D. Mass. June 2, 2016) .............................................................15

*Klimowicz v. Deutsche Bank Nat'l Trust Co.*, 907 F.3d 61, 64–65 (1st Cir. 2018) 13

*Mandel v. Town of Orleans*, 326 F.3d 267, 271–272 (1st Cir. 2003)......................14

*Miller v. Nichols*, 586 F.3d 53, 59 (1st Cir. 2009)........................................ 11, 13, 16

*Moore v. County of Butte*, 547 Fed. Appx. 826 (9th Cir. 2013).............................16

*Nelson v. Sharp*, No. 22-6018, 2023 U.S. App. LEXIS 26003, at *5–6 (6th Cir. Sept. 29, 2023) ....................................................................................................14

*Rancourt v. Bolger*, Case No. 3:21-cv-00189-JMK, 2023 U.S. Dist. LEXIS 9007 (D. Alaska Jan. 18, 2023) .....................................................................................15

*Romanova v. Epp*, Civil Action No.: 17-2720 (JLL), 2017 U.S. Dist. LEXIS 70296 (D.N.J. May 8, 2017) ...........................................................................................15

*Tyler v. Supreme Judicial Court of Mass.*, 914 F.3d 47 (1st Cir. 2019)...................8

*Wilson v. Shumway*, 264 F.3d 120 (1st Cir. 2001) .................................................22

**Rules**

1st Cir. R. 30.0(d).....................................................................................................9

Fed. R. App. P. 28(a) ...............................................................................................4

# JURISDICTIONAL STATEMENT

Contrary to Federal Rule of Appellate Procedure 28(a)(4), plaintiff-appellant Randall Collier's principal brief does not contain a jurisdictional statement and does not otherwise set forth a basis upon which this Court has jurisdiction over this matter. For the reasons set forth below, the trial court correctly concluded that Mr. Collier's claims are barred by the *Rooker-Feldman* doctrine, which deprives lower federal courts of jurisdiction over appeals of final state-court judgments.

## <u>STATEMENT OF THE ISSUES</u>

The district court dismissed this action on the basis that it lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine. Mr. Collier insists that the district court erroneously applied the *Rooker-Feldman* doctrine in dismissing his claims against the Judicial Defendants. This appeal accordingly distills down to the following issue:

> Was the district court correct in ruling that, under the *Rooker-Feldman* doctrine, it lacked jurisdiction to adjudicate Mr. Collier's claims?

## STATEMENT OF THE CASE

## I.    THE UNDERLYING DOMESTIC RELATIONS PROCEEDINGS IN NEW HAMPSHIRE CIRCUIT COURT

Beginning in or around 2013, Mr. Collier was a party to domestic relations proceedings in New Hampshire Circuit Court over which two of the Judicial Defendants presided in their capacities as state judicial officers.  *See* Appendix to Brief of Appellees ("Appendix") at 3 ¶¶ 3–4, 6.

According to Mr. Collier, the Circuit Court proceedings involved allegations that he had engaged in "domestic violence," "abuse," "harassment," and "threatening" towards the mother of his child T.C..  *See id*. at 3 ¶ 6.  Mr. Collier says that in the course of those proceedings, one of the Judicial Defendants issued a protective order against him as well as an order that provided the child's mother with "sole-decision making responsibility" with respect to the child.  *See id*. at 3 ¶ 3.

Based on the orders issued in that proceeding, Mr. Collier says he submitted three complaints to the New Hampshire Judicial Conduct Committee ("NH JCC").  *See id*. at 3 ¶ 5.  Mr. Collier appears to believe that the NH JCC did not properly respond to those complaints.  *See id*.

## II.   MR. COLLIER'S FEDERAL ACTIONS

### a. The First Action

Having not received the outcomes he desired before the Circuit Court or the NH JCC, Mr. Collier decided to file a civil action against the Judicial Defendants in the district court in May 2022 (the "First Action").  *See generally id*. at 3–12.

Proceeding *pro se*, Mr. Collier claimed that the Circuit Court's protection and parenting orders were unconstitutional for a variety of reasons.  *See id*. at 5–8 ¶¶ 13–37.  For instance, Mr. Collier claimed that issuance of the protective order violated his constitutional right to due process of law because the order was not supported by sufficient evidence, *see id*. at 5 ¶¶ 13–17; *id*. at 5–6 ¶¶ 19–21, and because the Circuit Court had not given adequate weight to certain evidence, *see id*. at 6 ¶ 22; *id*. at 7–8 ¶¶ 24–31.  Likewise, Mr. Collier claimed that the Circuit Court had denied him discovery and the opportunity to cross examine witnesses in violation of his due process rights.  *See id*. at 5 ¶ 18; *id*. at 6 ¶ 23.  He also claimed that the order concerning parenting rights violated due process because the Circuit Court lacked sufficient evidence to support its finding that unequal parenting time in favor of the mother was in the child's best interests.  *See id*. at 8 ¶¶ 33–36.

Based on these claims, Mr. Collier asked the district court to "over-rule[ ]" the state court orders and award him punitive damages in the amount of $11,741,420.00.  *See id*. at 11.

The Judicial Defendants moved to dismiss Mr. Collier's First Action on a variety of grounds. *See generally id*. at 13–25. As one basis for dismissal, the Judicial Defendants argued that Mr. Collier's claims necessarily demanded that the district court review and reject final state court judgments that had been appealable to the New Hampshire Supreme Court, and that the district court therefore lacked jurisdiction to adjudicate those claims under the *Rooker-Feldman* doctrine.[1] *See id*. at 20–21. The district court agreed. *See id*. at 26–28.

As the district court specifically explained in its dismissal order:

> Under what is known as the *Rooker-Feldman* doctrine, a federal district court has no jurisdiction to vacate or declare unconstitutional a state court's prior decisions on domestic or family disputes. *See*, *e.g.*, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (explaining that *Rooker-Feldman* doctrine bars litigants who lose in state court from "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"); *Tyler v. Supreme Judicial Court of Mass.*, 914 F.3d 47, 50 (1st Cir. 2019) (finding no jurisdiction when plaintiff's suit in federal district court was brought in attempt to circumvent state court's adjudication of her family law dispute). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceedings as, in substance, anything other than a prohibited appeal of the state-court judgment." *See Hill v. Town of Conway*, 193 F.3d 33, 39 (1st Cir. 1999).

---

[1] The Judicial Defendants also argued that Mr. Collier's complaint failed to plead facts sufficient to establish either diversity or federal question jurisdiction, that the Judicial Defendants enjoyed judicial immunity against Mr. Collier's claims, and that Mr. Collier had otherwise failed to state plausible claim for relief against the NH JCC. *See* Appendix at 18–23. The district court did not take up any of these alternative arguments in granting the Judicial Defendants' motion to dismiss, limiting its analysis to the *Rooker-Feldman* issue. *See id*. at 26–28.

Collier's suit is, in essence, an appeal from a state-court judgment. All of the relief he requests demands a predicate finding that the state court's rulings were incorrect. Since the entirety of the relief requested by Collier in this federal suit is predicated on a finding that a state court's prior orders and judgments were wrong, the court lacks subject matter jurisdiction. *See id.* In other words, this court lacks authority to do what Collier asks.

*Id.* at 27–28 (footnote omitted).

In accordance with its ruling that it lacked jurisdiction to adjudicate Mr. Collier's claims under the *Rooker-Feldman* doctrine, the district court entered judgment in the First Action on February 21, 2023. *See id.* at 29.

### b. The Second Action

About eleven months later—and having never exercised his appeal rights with respect to the First Action—Mr. Collier filed another action in the district court on January 10, 2024 (the "Second Action"). *See* Doc. No. 1.[2] As the district court recognized, the Second Action was "a nearly identical lawsuit" to the First Action. *See* Doc. No. 13 at 2.

Specifically, Mr. Collier again asserted a variety of claims about how the protection and parenting rights orders in the same Circuit Court proceedings were unconstitutional. *See* Doc. No. 1 at 5–11. And again, those claims were based on

---

[2] Record citations herein with respect to D.N.H. Case No. 24-cv-00015-JL are to the record and docket entries available through ECF as certified by the clerk of the district court. *See* 1st Cir. R. 30.0(d).

Mr. Collier's theories about the sufficiency of the evidence, *see id*. at 5–6 ¶¶ 20–24; *id*. at 6–7 ¶¶ 26–28; *id*. at 7–8 ¶¶ 31–34; *id*. at 10–11 ¶¶ 41–47, about the weight given certain evidence, *see id*. at 7 ¶ 29; *id*. at 8–9 ¶¶ 35–39, about discovery rulings, *see id*. at 6 ¶ 25, and about the denial of cross examination opportunity, *see id*. at 7 ¶ 30.

Based on these same claims, Mr. Collier asked the district court to "declare" how the Circuit Court's judicial officers should have applied "the supreme Law and common law," and he requested that the district court "help negotiate" a new parenting plan. *Id*. at 17. He also requested punitive damages again, this time in the amount of $31,534,000.00.

The Judicial Defendants moved to dismiss the Second Action on the same grounds they had moved to dismiss the First Action, *see* Doc. Nos. 11 (motion), 11-1 (supporting memorandum), and the district court again agreed that it did not have jurisdiction to adjudicate Mr. Collier's claims under *Rooker-Feldman*, *see* Doc. Nos. 13 (report and recommendation), 17 (order approving report and recommendation). As the district court explained this time:

> In 2022, Mr. Collier filed a nearly identical lawsuit in this court. On January 21, 2023, Judge McCafferty granted the defendants' motion to dismiss, based on lack of subject matter jurisdiction. Specifically, Judge McCafferty held that Mr. Collier's lawsuit was, in effect, an appeal from the New Hampshire state court rulings described above and was, therefore, barred by the *Rooker-Feldman* doctrine. There being little or no meaningful difference between this lawsuit and Mr. Collier's

previous suit against these defendants, the same result is warranted here.

## **<u>Rooker-Feldman Doctrine</u>**

Under the Rooker-Feldman doctrine, this Court lacks subject-matter jurisdiction to review the decisions of the state courts if the underlying matters are concluded. This doctrine precludes a federal action if the relief requested would effectively reverse or void a state court decision, or if the plaintiff's claims are 'inextricably intertwined' with the state court action. *See Johnson v. De Grandy*, 512 U.S. 997, 1005–1006 (1994); *Exxon Mobil Corp.* [ ], 544 U.S. 280 (doctrine applies to cases by state court losers seeking review and rejection of state court judgments rendered prior to commencement of federal suit).

Here, Mr. Collier explicitly asks this court to reverse state court rulings because, he believes, they were incorrect, unconstitutional, or corrupt. This court does not have jurisdiction to do so, and the action should, therefore, be dismissed. *See Miller v. Nichols*, 586 F.3d 53, 59 (1st Cir. 2009) (affirming dismissal of action relating to custody of child for lack of subject matter jurisdiction under Rooker-Feldman doctrine); *see also Dempsey v. Massachusetts State*, 959 F.2d 230, 1992 WL 60438, at *1 (1st Cir. 1992) (unpublished) ("[F]ederal district courts do not sit as 'super appellate courts' reviewing errors allegedly committed by a state court.").

Doc. No. 13 at 2–4 (internal record citations omitted).

The district court entered judgment in accordance with its dismissal ruling on June 28, 2024. *See* Doc. No. 17. This time, Mr. Collier decided to seek review of the *Rooker-Feldman* ruling, as he filed a notice of appeal on July 12, 2024.

# SUMMARY OF THE ARGUMENT

The district court dismissed Mr. Collier's First Action against the Judicial Defendant pursuant to the *Rooker-Feldman* doctrine. Months after his opportunity to appeal that ruling lapsed, Mr. Collier filed the nearly identical Second Action against the Judicial Defendants which the district court dismissed on the same basis.

Under circumstances where Mr. Collier slept on his appeal rights after the First Action, it is far from clear that he should be permitted to proceed on an appeal of the Second Action that is functionally identical to the appeal he previously chose to forego. The Court need to reach this issue, however, because the present appeal lacks merit. In dismissing his claims against the Judicial Defendants, the district court properly applied the *Rooker-Feldman* doctrine, which bars disappointed state court litigants like Mr. Collier from asking a federal district court to review and reject state court judgments. As the district court correctly recognized, although Mr. Collier did not style his claims as a direct appeal of the underlying state court rulings, his claims for equitable and monetary relief against the Judicial Defendants would have necessarily required the district court to review and reject those rulings.

# ARGUMENT

## I. THE DISTRICT COURT CORRECTLY RULED THAT IT LACKED SUBJECT-MATTER JURISDICTION UNDER THE *ROOKER-FELDMAN* DOCTRINE

"The *Rooker-Feldman* doctrine preserves the [United States] Supreme Court's exclusive jurisdiction over appeals from final state-court judgments by divesting lower federal courts of jurisdiction to hear certain cases brought by parties who have lost in state court." *Klimowicz v. Deutsche Bank Nat'l Trust Co.*, 907 F.3d 61, 64–65 (1st Cir. 2018) (internal quotation and citations omitted).

"Specifically, the doctrine applies to 'cases brought by state-court losers complaining of injuries caused by state-court judgments that were rendered before the district court proceedings commenced and invite district court review and rejection of those judgments.'" *Id*. (quoting *Exxon Mobil Corp.*, 544 U.S. at 284, 292 (2005) ). Thus, "*Rooker-Feldman* bars jurisdiction whenever 'parties who lost in state court seek review and rejection of that judgment in federal court.'" *Miller*, 586 F.3d at 59.

Put another way, "if federal litigation is initiated after state proceedings have ended, and the plaintiff *implicitly or explicitly* seeks review and rejection of the state judgment, then a federal suit seeking an opposite result is an impermissible attempt to appeal the state judgment to the lower federal courts, and, under *Rooker-Feldman*, the federal courts lack jurisdiction." *Federacion de Maestros de P.R. v.*

13

*Junta de Relciones del Trabajo de P.R.*, 410 F.3d 17, 24 (1st Cir. 2005) (emphasis added; internal quotation and brackets omitted).

State proceedings have "ended" for purposes of *Rooker-Feldman* "[a]s long as a state-court suit has reached a point where neither party seeks further action in that suit . . . ." *Klimowicz*, 907 F.3d at 65. It is at this point that "the state proceedings are considered ended and the judgment is deemed sufficiently final to trigger the *Rooker-Feldman* doctrine." *Id*.

Thus, as this Court has observed, *Rooker-Feldman* prevents parents like Mr. Collier from attempting to invalidate state court orders regarding parental rights through civil actions in federal district court. *See Mandel v. Town of Orleans*, 326 F.3d 267, 271–272 (1st Cir. 2003) (applying *Rooker-Feldman* to vacate a preliminary injunction order concerning state court child custody determination). Other federal courts have observed the same. *See*, *e.g.*, *Nelson v. Sharp*, No. 22-6018, 2023 U.S. App. LEXIS 26003, at *5–6 (6th Cir. Sept. 29, 2023) (ruling that *Rooker-Feldman* supported the district court's dismissal of claims where "[t]he plaintiffs alleged that [the state circuit court judge's] orders violated their constitutional rights and sought a declaration voiding the [state circuit court's] orders and returning the children to their care and custody"); *Fox v. Lederman*, Case No. 17-21223-CIV-Moore/Simonton*, 2018 U.S. Dist. LEXIS 11539, at *8 (S.D. Fl. Jan. 23, 2018) (recognizing that "[t]he Eleventh Circuit has consistently

applied the *Rooker-Feldman* doctrine to suits challenging child custody rulings made by state courts); *Johnson v. Salmon*, Civil Action No. 15-11781-DJC, 2016 U.S. Dist. LEXIS 73390, at \*8–9 (D. Mass. June 2, 2016) (concluding that under *Rooker-Feldman*, the court lacked jurisdiction over claims that "necessarily would require this Court to delve into the validity of the California [superior court] and Massachusetts [probate court] orders" pertaining to child custody); *East v. Lake County Sheriff Dep't*, Cause No. 2:14cv058 PPS JEM, 2015 U.S. Dist. LEXIS 120272, at \*11–12 (N.D. Ind. Sept. 9, 2015) (ruling that *Rooker-Feldman* barred the court from considering claims of injury relating to state superior court custody order).

The same is true with respect to attempts to use a federal action to attack protective orders issued by state courts in domestics relations proceedings. *See*, *e.g.*, *Rancourt v. Bolger*, Case No. 3:21-cv-00189-JMK, 2023 U.S. Dist. LEXIS 9007, at \*25–29 (D. Alaska Jan. 18, 2023) (ruling that *Rooker-Feldman* doctrine barred claims related state court proceeding in which a "long-term domestic violence protective order" had been allowed against the plaintiff); *Romanova v. Epp*, Civil Action No.: 17-2720 (JLL), 2017 U.S. Dist. LEXIS 70296, at \*2 (D.N.J. May 8, 2017) (ruling that because the plaintiff sought an order from the court reversing various orders of the state court regarding domestic violence and child custody, the court was without jurisdiction to entertain the matter pursuant to the

*Rooker-Feldman* doctrine); *Moore v. County of Butte*, 547 Fed. Appx. 826, 829 (9th Cir. 2013) (affirming district court's dismissal of plaintiff's request to reverse the outcome of her divorce proceedings, child custody case, and domestic violence hearings).

For these reasons—and as the district court correctly ruled (twice)—Mr. Collier's claims against the Judicial Defendants amounted to no more than "an effort to do an end run around the state court's judgment," *Miller*, 586 F.3d at 59, and *Rooker-Feldman* therefore foreclosed the district court from exercising jurisdiction over his claims.

In advancing this appeal, Mr. Collier appears to take issue with the district court's conclusion that his claims were effectively attempts to appeal final rulings in the underlying state court proceedings. *See* Appellant's Br. at 16. According to Mr. Collier, his claims were actually based on "the entire New Hampshire 'Family Court' process, and its initial legitimacy" and should therefore have been construed as "challenges upon the 'constitutionality' of the entire New Hampshire State Court system and process(es) and procedure(s) this Plaintiff has experienced in New Hampshire State Supreme Court, Family Court, and Judicial Conduct Committee [sic]." *Id*. His argument is defied by the record though.

Through his complaints in both the First Action and the Second Action, Mr. Collier took specific issue with specific rulings issued by specific state judicial

officers, and he asked the district court to award him relief that would have required the district court to review and reject those rulings. *See, e.g.*, Appendix at 5–8 (setting forth "specific charges" as to "why previous court order(s) for a 'domestic violence' 'protective order' and 'sole decision-making responsibility' for the mother only, are not Constitutional"); *id*. at 11 (demanding that "previous unconstitutional court orders [ ] be over-ruled, and a new equal 'parenting plan' be negotiated"); Doc. No. 1 at 5–11 (setting forth specific claims about the purportedly "invalid 'domestic violence' 'protective order' and 'parenting plan' and 'sole decision-making responsibility' for the mother only"); *id*. at 16 (demanding that the district court "declare" how federal law "should be applied" by the state court in "the instances cited herein" and that the district court "help negotiate a new equal 'parenting plan'").

The fact that Mr. Collier asserted his claims against the specific judicial officers who he alleges presided over the underlying domestic relations matter (and against the judicial oversight body to which he submitted complaints against those officers) underscores that his claims were never intended as "challenges upon the 'constitutionality' of the entire New Hampshire State Court system" as he says now. Rather, as the record demonstrates and the district court correctly concluded, the theory behind each of his claims was that the district court needed to reject

final decisions in the state court proceedings on the basis that those decisions had caused him constitutional injury.

In support of his argument that the district court applied the *Rooker-Feldman* doctrine erroneously, Mr. Collier relies heavily on the Eleventh Circuit's opinion in *Behr v. Campbell*, 8 F.4th 1206 (11th Cir. 2021). *See* Appellant's Br. at 1, 4. According to Mr. Collier, the district court "directly ignored" this case in dismissing his claims. *Id.* at 4 (emphasis omitted). Mr. Collier's argument demonstrates his misunderstanding of *Behr*'s nuance.[3]

In *Behr*, the Eleventh Circuit ruled that the trial court had applied the *Rooker-Feldman* too broadly in dismissing certain federal constitutional claims against *non-judicial* parties. Similar to this case, the plaintiffs' claims arose out of

---

[3] Notably, a substantial portion of Mr. Collier's brief is a verbatim copy of the appellant's brief in *Behr*. *Compare* Appellant's Br. at 5 (statement of the issues), *with* Joint Principal Brief of Appellants in *Behr*, 2021 U.S. 11TH CIR. BRIEFS LEXIS 2627 (hereinafter, "*Behr* Br.") at *4–5 (statement of the issues); *compare* Appellant's Br. at 9–10 (summary of argument(s)), *with Behr* Br. at *10–14; (summary of argument); *compare* Appellant's Br. at 11–15 (argument(s)), *with Behr* Br. at 14–24 (argument). Having merely copied briefing from an unrelated matter, Mr. Collier's brief contains numerous misrepresentations about the record in this case. For instance, Mr. Collier misrepresents that the district court dismissed his complaint *sua sponte*. *See* Appellant's Br. at 5, 9. He likewise misrepresents the caselaw that the district court relied on in ruling that the *Rooker-Feldman* doctrine applied to his claims. *See* Appellant's Br. at 10 (wrongly asserting that the district court relied on *Ankenbrandt v. Richards*, 503 U.S. 689 (1992), which it neither discussed nor cited).

circumstances that involved "a difficult series of child custody interventions and state proceedings." *Behr*, 8 F.4th at 1208. But the similarities end there.

Unlike this case—where Mr. Collier specifically directs his claims at state judicial officers and their rulings (and at the NH JCC based on its response to his complaints about those rulings)—the *Behr* plaintiffs directed their claims against third parties to the underlying state proceedings who the plaintiffs asserted had "conspired to deprive [the plaintiff father] of custody through state child custody proceedings." *Id*. at 1208–1209. Those third parties included the plaintiff father's "ex-wife, her partner, an employee of Child Protective Services, the principal at [the child's] school, the Palm Beach County School District, and the Palm Beach County Department of Children and Families." *Id*.

The *Behr* plaintiffs claimed that these non-judicial defendants had independently violated the plaintiffs' federal rights in the course of the state judicial proceedings by "fabricating reports, pressuring the children to make false statements against their father, entering [the father's] home without permission and on false pretenses, and discriminating against the [plaintiffs'] on the basis of age, sex, disability and religion." *Id*. at 1209. They accordingly asserted claims for damages against these non-judicial defendants for "violation of [the plaintiffs'] procedural due process rights, discrimination, and an unreasonable search and seizure." *Id*. at 1212; *see id*. at 1213.

While the trial court ruled that it lacked jurisdiction to adjudicate these claims under the *Rooker-Feldman* doctrine because the claims were "inextricably intertwined" with the underlying state court proceedings, *see id*. at 1209, the *Behr* Court rejected this analysis. The *Behr* Court specifically concluded that *Rooker-Feldman* does not deprive a lower court of jurisdiction over a claim merely because the claim is "intertwined" with or "related in one way or another to state court litigation." *See id*. at 1209–1213. Instead, *Behr* clarified that *Rooker-Feldman*'s application is limited to those claims that are "brought by state-court losers complaining of injuries *caused by* state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 1212 (emphasis added). In other words, "[t]he injury must be caused by the judgment itself" for the doctrine to apply. *Id*.

As the *Behr* Court took care to explain, the *Behr* plaintiffs' claims did not fall within that category of claims because: (a) they were claims for money damages against non-judicial third-parties with collateral relationships to the underlying state proceedings, and (b) they were based on allegations that those third-parties had conspired to violate the plaintiffs' constitutional rights by presenting false information to the state court, by engaging in an unlawful search and seizure of the plaintiff father's home, and by making statements to the state

court that discriminated against the plaintiffs on the basis of age, gender, religious beliefs, and disability. *See id*. at 1212–1214.

For these reasons, the *Behr* Court concluded that the *Behr* plaintiffs were not seeking review and rejection of state court judgments through their claims. Instead, they were seeking damages against individuals and entities that were not involved in rendering those judgments based on allegations that were "collateral to" those judgments. *Id*. at 1214. Their claims were thus distinct from Mr. Collier's claims against the Judicial Defendants in this case, all of which would have required the district court to review and reject the underlying state court judgments that Mr. Collier complained of.

In addition to misunderstanding the material differences between his claims and those asserted by the *Behr* plaintiffs, it is further noteworthy that the *Behr* Court expressly rejected the position Mr. Collier appears to advance here. Specifically, while Mr. Collier has attempted to style his claims as something other than a direct appeal of the underlying state court judgments by requesting damages and by making conclusory arguments about the validity of the state judicial system as a whole, the *Behr* Court was clear that these types of style-tactics make no difference with respect to whether *Rooker-Feldman* applies:

> Rooker-Feldman [ ] does not prioritize form over substance. It bars all appeals of state court judgments—whether the plaintiff admits to filing a direct appeal of the judgment or tries to call the appeal something else. In *Feldman*, for example, the plaintiffs asked the district court to

overturn the state court's judgment. But they *also* asked the district court to declare that the state court acted "arbitrarily and capriciously" by denying their claim. The Supreme Court recognized that these two claims were one and the same and dismissed both for lack of jurisdiction.

*Feldman*'s holding does not seem complicated through that lens: appeals of state court judgments are barred under *Rooker-Feldman*, no matter how the claims are styled.

*Id*. at 1211 (internal citations omitted; emphasis in original); *accord Efron v. Candelario*, 110 F.4th 1229, 1235–1238 (11th Cir. 2024) (affirming dismissal of claims pursuant to *Rooker-Feldman*, notwithstanding the plaintiff's argument that the doctrine did not apply "because he [did] not ask that the district court overturn the state court opinion but rather [sought] compensatory damages"); *Ellison v. Brock*, 122 Fed. Appx. 519, 520–521 (1st Cir. 2004) (affirming dismissal of damages claim under *Rooker-Feldman* where "[t]he premise of plaintiff's damage claims" was that the state court's ruling "was incorrect"); *Wilson v. Shumway*, 264 F.3d 120, 121, 126 (1st Cir. 2001) (same).

Accordingly, the non-binding authority Mr. Collier relies on to advance his argument here simply confirms that his claims are exactly the type to which the *Rooker-Feldman* doctrine applies.

For all of these reasons, and to the extent this Court concludes or assumes that it has jurisdiction over the merits of Mr. Collier's appeal, the district court's judgment should be affirmed.

# CONCLUSION

For the foregoing reasons, the Court should affirm the district court's judgment.

Respectfully submitted,

THE HON. JAMES M. CARROLL;
THE HON. MICHAEL GARNER; and
THE NEW HAMPSHIRE JUDICIAL
CONDUCT COMMITTEE

By their attorneys,

JOHN M. FORMELLA
ATTORNEY GENERAL

       and

ANTHONY J. GALDIERI
SOLICTOR GENERAL

*/s/ Nathan W. Kenison-Marvin*
Nathan Kenison-Marvin, Bar No. 1201546
Assistant Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, NH 03301-6397
(603) 271-3650
nathan.w.kenison-marvin@doj.nh.gov

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 4,325 words.

2.      This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 with 14-point Times New Roman.

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2024, I served copies of the Brief of Appellees on all parties of record by way of this Court's electronic filing system.

*/s/ Nathan W. Kenison-Marvin*
Nathan W. Kenison